FILED
2016 Dec-27  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDALL COREY ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:16-cv-439-TMP |
| | ) | |
| CITY OF HOMEWOOD, | ) | |
| WAL-MART STORES EAST, L.P., | ) | |
| LT. TIM ROSS, OFFICER | ) | |
| MICHAEL JEFFCOAT, DAVID | ) | |
| ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause is before the court on motions to dismiss filed by the various defendants. For the reasons explained below, the motions are due to be granted in part and denied in part, with further proceedings with respect some of plaintiff's claims.

## Procedural Background

The plaintiff, Randall Corey Anderson, filed his original complaint in the Circuit Court of Jefferson County, Alabama, on February 11, 2016, alleging various claims under state and federal law against defendants City of Homewood

('the City" or "Homewood"), Wal-mart Stores East, L.P. ("Wal-mart"),[1] and

various fictitiously-named defendants.[2]   That action was removed to this court on

the basis of federal-question subject matter jurisdiction on March 17, 2016.  (Doc.

1).  At the same time, the City filed its first motion to dismiss the complaint.  (Doc.

3).  Wal-mart followed suit, filing its motion to dismiss on March 21, 2016.  (Doc.

5).  After responding to the motions (see Doc. 8), plaintiff filed his First Amended

Complaint on July 15, 2016,[3] adding as defendants Lt. Tim Ross, Officer Michael

Jeffcoat, and Wal-mart store manager David Roberts.  Thereafter, renewed motions

to dismiss[4] were filed by the City, Wal-mart, and newly-added defendants Ross,

---

[1]   In his original complaint, plaintiff identified this defendant as "Walmart Department Store."
The defendant has indicated that its correct legal name is that set forth in the text above.

[2]   Although Alabama law recognizes fictitious party pleading, see Columbia Eng'g Int'l, Ltd. v.
Espey, 429 So. 2d 955, 958 (Ala. 1983), federal law generally does not.  See Richardson v.
Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  In any event it is not necessary for the court to
address the propriety of these defendants at this point.

[3]   In the meantime, the parties filed their consent to the exercise of jurisdiction by the magistrate
judge pursuant to 28 U.S.C. § 636(c) on April 19, 2016.  (Doc. 10).

[4]   Because the First Amended Complaint operated to supersede and supplant the original
complaint, the motions to dismiss filed before the complaint was amended are now moot as they
related to a pleading that has been superseded.  See, e.g. Davis v. Mortg. Elec. Regis. Sys., Inc.,
2015 WL 4561547, at *6 (N.D. Ga. July 28, 2015) ('[T]the amended complaint is the operative
pleading and… the motion to dismiss the amended complaint supercedes [sic] and moots the
motion to dismiss the original complaint."); see also Wimberly v. Broome, 2016 WL 3264346, at
*1 (S.D. Ga. Mar. 29, 2016), report and recommendation adopted, 2016 WL 3360521 (S.D. Ga.
June 14, 2016) (cases collected therein).  Thus, the operative motions are now documents 24, 25,
and 27.  Documents 3 and 5 are hereby deemed MOOT.

Jeffcoat, and Roberts (see Docs. 24, 25, and 27), to which the plaintiff has responded.

## Standard of Review

The motions to dismiss assert that the First Amended Complaint is due to be dismiss because it fails to comply with Fed. R. Civ. P. 8(a) and it fails to state a claim for relief under Rule 12(b)(6). In particular, the defendants argue that the complaint fails to allege sufficient facts to show that the "pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[5]

Before the Supreme Court decided Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint only where it was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, as set forth in Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The well-established Rule 12(b)(6)

---

[5] The court notes in passing that the First Amended Complaint also commits several of the sins, both mortal and venial, associated with "shotgun pleadings" discussed in Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015). For example, the First Amended Complaint commits the "mortal" sin of "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Id. at 1322. The complaint also commits the venial sin of "not separating into a different count each cause of action or claim for relief." Id. at 1322-23. It also contains "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. at 1323 (11th Cir. 2015).

standard set forth in Conley was expressly rejected in Twombly when the Supreme

Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted). The Court went on to criticize Conley, stating

that "[t]he 'no set of facts' language has been questioned, criticized, and explained

away long enough" by courts and commentators, and "is best forgotten as an

incomplete, negative gloss on an accepted pleading standard: once a claim has

been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." Twombly, 550 U.S. at 562-63. The

Supreme Court emphasized, however, that "we do not require heightened fact

pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face." 550 U.S. at 570.

The Supreme Court expanded on the Twombly standard when it decided

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009),

reiterating the Twombly determination that a claim is insufficiently pleaded if it

offers only "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." Iqbal, 129 S. Ct. at 1949. The Court further explained:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... Rule 8 marks a notable and generous departure from the hyper technical, code pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949-50 (citation omitted). See also Sinaltrainal v. Coca-Cola

Co., 578 F.3d 1252 (11th Cir. 2009), overruled on other grounds by Mohamad v.

Palestinian Authority, ___U.S.___, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012)

("The mere possibility the defendant acted unlawfully is insufficient to survive a

motion to dismiss" and "the well pled allegations must nudge the claim 'across the line from conceivable to plausible'" (quoting Iqbal and Twombly)).  Applying these standards, the court examines the merits of the defendants' motions to dismiss in the light of the facts (not conclusions) pleaded in the First Amended Complaint.

Facts Alleged in the Complaint

The court assumes the following facts, taken from the First Amended Complaint, to be true for purposes of analyzing the motions to dismiss.

On December 26, 2014, the plaintiff participated in a Black Lives Matter demonstration at the Wal-mart store on Lakeshore Parkway in Homewood.  After the demonstration was over, he was talking in the parking lot to a small group of people who also participated.  Defendant Ross, then a lieutenant in the Homewood Police Department, approached a man with whom plaintiff was speaking. Lt. Ross[6] informed the man that he was being placed under arrest for trespassing, and he ordered a subordinate officer to take the man into custody.  Plaintiff began using his cellphone to video record the confrontation and arrest of the other man. Lt. Ross then ordered plaintiff to leave immediately or "you can go with him." Plaintiff complied and began walking toward his car parked in the parking lot.  As

---

[6]  Since this incident, Lt. Ross has been promoted to Chief of the Homewood Police Department, but that appears to have no bearing on the facts of the case.

he approached his car, he heard a voice believed by him to be Lt. Ross shout, "Too late."   Defendant Jeffcoat and "other officers" then arrested plaintiff.   In the process of the arrest, plaintiff was shoved against his car, bruising his wrist and putting long scratched into the paint finish of his car.

Plaintiff alleges that Officer Jeffcoat later filled out an incident/offense report in which he reported that:

> Anderson was filming the encounter with his cell phone. Lt. Ross repeatedly told Anderson to stop filming and leave. Anderson refused and continued to record the encounter.  Lt. Ross instructed me to take Anderson into custody for criminal trespass which I did.  Anderson was asked if he had identification on him. He stated it was in his vehicle.  Anderson was asked for, and gave, verbal consent to search the vehicle (GA [tag number omitted]).  Anderson then spontaneously stated that he had a firearm in the vehicle. In the center console I located a Georgia license ([driver's license number omitted]).  In the glove box I located a loaded Glock 26 handgun (serial # [omitted]).

Plaintiff was transported to the Homewood City Jail in a police cruiser.

Later, defendant David Roberts, as the manager of the Wal-mart store, signed a criminal complaint for third-degree trespass, in which he swore:

> Before me, the undersigned authority, personally appeared this day the undersigned complainant who upon 1st [sic] being duly sworn, states on oath the he/she has probable cause for believing and does believe that Randall Corey Anderson, Defendant, whose name is otherwise unknown to the complainant, did on or about December 26, 2014, commit the offense of Criminal Trespass 3RD within the

city/Town of Homewood, or in the police jurisdiction thereof and that he/she did:

knowingly enter or remain unlawfully in or upon the premises of WalMart [sic], to-wit: After being told by WalMart Store Manager David Roberts, in the presence of Homewood Police to leave the property of WalMart located at 209 Lakeshore Parkway, subject (Anderson) refused to leave as instructed,

in violation of Ordnance Number 14-1 which embraces Section 13A-7-4 Code of Alabama 1975, previously adopted, effective and in force at the time the offense was committed.

On July 23, 2015, plaintiff came to trial on the trespass charge against him. During the trial, Roberts testified that he did not issue a trespass warning to the plaintiff individually, contrary to his own sworn criminal complaint, and that he could not remember seeing the plaintiff inside the Wal-mart store. Plaintiff was acquitted by jury verdict at trial (Doc. 21, ¶ 58).

### Claims Alleged in the Complaint

The First Amended Complaint consists of eleven purported claims for relief, as follows:

1. <u>First Claim</u>—Plaintiff's arrest violated his Fourth Amendment right to be free of unreasonable searches and seizures because there was "no sufficient legal basis to support an arrest"; and the defendants' actions deprived the plaintiff of "life, liberty, and property without due process of law, and the right to the equal protection of the laws," secured by the Fourteenth Amendment.

2.  <u>Second Claim</u>—The "**gross negligence** and/or deliberate indifference" of the defendants was "the proximate cause of violation of Randall's [sic] Anderson's constitution rights and damage to his personal property and false imprisonment."

3.  <u>Third Claim</u>—It was a policy and custom of the City to authorize the use of **excessive force** in violation of plaintiff's constitutional rights and causing damage to his personal property.  Defendant Wal-mart became "a co-conspirator when a warrant of arrest was signed for the Plaintiff," leading to his ultimate acquittal at trial.

4.  <u>Fourth Claim</u>—"Plaintiff was caused to be denied equal protection under the laws and subjected to **false arrest** in violation of 42 U.S.C. Section 1983."

5.  <u>Fifth Claim</u>—"Plaintiff was caused to be denied equal protection under the laws and subjected to **false imprisonment** in violation of 42 U.S.C. Section 1983."

6.  <u>Sixth Claim</u>—"Plaintiff was caused to be denied equal protection under the Alabama State Constitution and subjected due to the Defendant's unconstitutional official **misconduct** amounting to an **abuse of the judicial process**."

7.  <u>Seventh Claim</u>—"[T]he Defendants mentioned herein conducted themselves in a manner that was **extreme, outrageous, and unjustified which go beyond the boundaries of professionalism and decency**."

8.  <u>Eighth Claim</u>—The City's posting of the plaintiff's photograph on the Homewood Police Department's social media site slandered him and placed him in a false light.

9.  <u>Ninth Claim</u>—As a result of the defendant's actions, plaintiff suffered "**malicious abuse of process, false arrest, failure to train, false imprisonment, violation of constitutional & civil rights, and slander**."

10.  <u>Tenth Claim</u>—The defendants subjected plaintiff to an "**assault and battery**."

11.  <u>Eleventh Claim</u>—"[T]he Defendants [sic] **failure to supervise and train** its agents/employees caused harm to Randall Anderson."

<u>The Motions to Dismiss</u>

The City filed its instant motion to dismiss on August 15, 2016 (Doc. 24),

contending that the claims against it should be dismissed because:

> <u>First</u>, the amended complaint fails to state a claim upon which relief
> can be granted.  Fed. R. Civ. 12(b).  <u>Second</u>, the amended complaint
> fails to satisfy pleading standards.  Fed. R. Civ. P. 8(a); <u>Ashcroft v.
> Iqbal</u>, 556 U.S. 662 (2009).  <u>Third</u>, the City is immune to state law
> claims under Alabama Code § 6-5-338 (1975).  <u>Fourth</u>, the City is
> immune under Alabama Code § 11-47-190 (1975) for all state law
> claims for willful, wanton, and reckless torts.  <u>Fifth</u>, the City is
> shielded from punitive damage claims.

On that same day, defendants Ross and Jeffcoat also filed their motion to dismiss

(Doc. 25), asserting many of the same grounds for dismissal of the First Amended

Complaint:

> <u>First</u>, the amended complaint fails to state a claim upon which relief
> can be granted.  Fed. R. Civ. 12(b).  Second, the amended complaint
> fails to satisfy pleading standards.  Fed. R. Civ. P. 8(a); <u>Ashcroft  v.
> Iqbal</u>, 556 U.S.  662 (2009).  <u>Third</u>, Ross and Jeffcoat are entitled to
> qualified immunity because, among other reasons, Anderson has
> failed to plead violation of a   clearly established constitutional right.
> <u>Fourth</u>, Ross and Jeffcoat are immune under Alabama Code § 6-5-338
> (1975).  <u>Fifth</u>, Ross and Jeffcoat cannot be liable under Alabama law
> for tortious supervision because they were not employers.

The City and defendants Ross and Jeffcoat filed a Memorandum of Points and

Authority jointly in support of their motions.  (Doc. 26).  Likewise on August 15,

2016, defendants Wal-mart and Roberts filed their motion to dismiss (Doc. 27), asserting that First Amended Complaint failed to state a claim for relief in light of the pleading standards required by Rule 8(a) of the Federal Rules of Civil Procedure, and that defendant Roberts had not been sufficiently served with sufficient process. Plaintiff filed separate responses to each of these motions on August 29, 2016. (Docs. 30, 31, 32, and 33), and defendants Homewood, Ross, and Jeffcoat filed a reply to the plaintiff's responses on September 1, 2016. (Doc. 34).

## Analysis and Discussion

At the outset, the court notes that a Rule 12(b)(6) motion to dismiss for failure to state a claim and reference to the pleading standards of Fed. R. Civ. P. Rule 8(a) make essentially the same argument for dismissal; they are not truly separate bases for challenging a complaint. Rather, the pleading standards of Rule 8(a) define the criteria by which the sufficiency of a pleading is assessed in relation to a challenge mounted under Rule 12(b)(6). As Twombly and Iqbal make clear, whether a complaint can be dismissed under Rule 12(b)(6) for failing to state a claim depends in part on whether the complaint contains sufficient factual allegations, not mere labels or conclusions, from which a reasonable person can conclude that the complaint states a "plausible" legal claim. As the Eleventh Circuit explained in American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289

(11th Cir. 2010), "'[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' The [Supreme] Court ultimately held that to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (Internal citations omitted). Reference to mere labels or legal conclusions unsupported by allegations of *fact* is not enough. Thus, the analysis of a motion to dismiss for failure to state a claim requires the court to determine whether, in light of the well-pleaded *factual* allegations of the complaint, a "plausible"[7] legal claim is stated. If the pleaded facts do so, a particular complaint is not due to be dismissed for failure to state a claim; if they do not, the claim may be dismissed.[8]

With this understanding in mind, the court must examine the legal sufficiency of the facts pleaded in support of each claim alleged by the plaintiff. Defendants Wal-mart and Roberts have offered no brief or memoranda to point to particular defects in the facts alleged by the plaintiff, but have stated simply that the complaint fails to state a claim. In the absence of a plain and obvious

---

[7]   The facts pleaded in the complaint, assumed to be true, most show more than a mere "possible" claim of legal wrongdoing, but they do not need to rise to the level of showing a "probability" of a viable claim. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1289 (11th Cir. 2010).

[8]   Despite the usual language referring to the dismissal of the "complaint" for failure to state a claim, in reality the court is required to analyze each *claim* in the complaint, in a claim-by-claim basis. This is consistent with the language of Rule 12(b)(6), allowing dismissal where there is a failure to state a "claim" for relief.

insufficiency in the plaintiff's factual pleading, the court is not required to scour the complaint looking for deficiencies.   Defendants Homewood, Ross, and Jeffcoat, in contrast, have filed a memorandum of points and authorities to bring to the court's attention those allegations they contend fail to meet the Twombly plausibility standard.

   A.  *Claims against the City of Homewood*

      1. Federal-law Claims[9]

   The defendants' memorandum of points and authorities asserts no particular argue for dismissal of the federal-law claims pleaded against the City of Homewood, other than the contention that the First Amended Complaint is a "shotgun" pleading that fails to meet the notice requirement of Rule 8(a). Although the court agrees that the complaint is an example of a "shotgun" pleading, it does not agree that it fails to give fair notice to the City of the claims alleged against it.  Plainly, the plaintiff contends that Lt. Ross and Officer Jeffcoat arrested him illegally without probable cause and used illegally excessive force in doing so.  Based on that, he contends that the City was deliberately indifferent to

---

[9]   The court construes the First Amended Complaint to allege the following claims grounded in federal law:  First Claim—arrest without probable cause (Fourth Amendment) and denial of due process and equal protection (Fourteenth Amendment); Second Claim—deliberate indifference to violation of the plaintiff's constitutional rights; Third Claim—use of excessive force in violation of the Fourth Amendment; Fourth Claim—arrest without probable cause (Fourth Amendment) and denial of equal protection (Fourteenth Amendment); and Fifth Claim—false imprisonment and denial of equal protection (Fourteenth Amendment).  To be clear, the Second Claim also appears to involve elements of a state-law claim for gross negligence causing property damage and false imprisonment.

the need to train its officers on the proper standards for making a constitutionally-proper arrest.  Whether plaintiff can actually prove these allegations is not the question at this stage of the case.  Insofar as the City's motion to dismiss seeks dismissal of federal-law claims, it is DENIED.

## 2. State-law Claims

Even though the First Amended Complaint give the City fair notice of the plaintiff's Fourth and Fourteenth Amendment claims against it, there are some state-law claims pleaded in the complaint that are legally insufficient or barred from going forward.  In its motion to dismiss, the City has explicitly argued that Alabama Code § 11-47-190 (1975) shields it from liability for any state-law claims based on willful, wanton, or reckless conduct by its officers.[10]  Alabama Code § 11-47-190 (1975) provides in relevant part, "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless

---

[10]   The City of Homewood also contends that it has immunity from liability pursuant to Ala. Code § 6-5-338 (1975), which grants immunity to municipalities for the acts of its law enforcement officers to the extent the law enforcement officer himself can claim immunity. "'[U]nder principles of vicarious liability, where a municipal employee enjoys immunity, the municipality likewise is immune as to claims based on the employee's conduct.' City of Bayou La Batre v. Robinson, 785 So. 2d 1128, 1131 (Ala. 2000)." Brown v. City of Huntsville, Ala., 608 F.3d 724, 742 (11th Cir. 2010).  Because the City's immunity is derivative of the immunity granted to police officers, the City is immune from claims only to the extent to Ross and Jeffcoat can claim it.  Because, as discussed more below, the court cannot determine from the pleadings alone that Lt. Ross and Officer Jeffcoat are entitled to the immunity provided under this provision against every claim pleaded by the plaintiff, it is too early to determine on a motion to dismiss that the City is entitled to it.  Whether the immunity provided by Ala. Code § 6-5-338 is available to the City, Ross, or Jeffcoat on such claims as arresting the plaintiff without probable cause and using excessive force to make the arrest, the determination of the City's immunity on these claims must await further factual development.

14

such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee…."  This provision has been authoritative interpreted to mean that cities are not liable for intentional torts committed by its agents and employees.  "Section 11–47–190 provides for an action against a municipality for the 'neglect, carelessness or unskillfulness' of its agents, not for their intentional torts."  Franklin v. City of Huntsville, 670 So. 2d 848, 850 (Ala. 1995); see Ex parte City of Gadsden, 718 So. 2d 716, 721 (Ala. 1998) ("Section 11–47–190 ... absolves a city from liability for an intentional tort committed by one of its agents....").  "In sum, under § 11–47–190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."  Brown v. City of Huntsville, Ala., 608 F.3d 724, 743 (11th Cir. 2010).  Likewise, a municipality is not liable for the wanton or reckless acts of its employees.  "[B]ecause the City cannot be held liable for wanton or intentional conduct, it is likewise immune from suit for those claims asserted by the plaintiffs alleging wanton and/or intentional conduct by the City."  Ex Parte Labbe, 156 So. 3d 368, 374 (Ala. 2014); Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala. 1998) ("This Court has construed § 11–47–190 to exclude liability for wanton misconduct."); Ex parte Harris, 2016 WL 4204837, at *12 (Ala. July 29, 2016).  Thus, to the extent plaintiff alleges a state-law claim against the City of Homewood based upon intentional or even reckless and wanton

15

conduct by its employees, the City is not liable.  Under § 11-47-190, the City can

be liable only for the negligent "unskillfulness" of its employees.

Among the state-law claims pleaded by the plaintiff in this case are the

allegations that the City and its employees subjected him to "official misconduct

amounting to an abuse of judicial process" (Sixth Claim); tort of outrage (Seventh

Claim); slander and false light (Eighth Claim); malicious abuse of process, false

arrest, false imprisonment, "failure to train," "violation of constitutional & civil

rights," and slander (Ninth Claim); and assault and battery (Tenth Claim).  Some of

these claims, by their nature, can only allege intentional or wanton misconduct, not

mere negligence.  See Walker v. City of Huntsville, 62 So. 3d 474, 501 (Ala. 2010)

(outrage and invasion of privacy are intentional torts).  It is possible that other

claims may or may not be based on intentional or wanton conduct.  As the Middle

District of Alabama has explained:

> "In *Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala.1995), the
> court held that claims for false arrest and false imprisonment may be
> brought against municipalities as long as the plaintiff alleges a fact
> pattern that demonstrates neglect, carelessness, or unskillfulness.  *Id.*
> at 851. . . .  Similarly, the motion to dismiss is due to be denied as to
> the claim for assault and battery because the Supreme Court of
> Alabama has determined that an assault and battery can occur because
> of unskillfulness.  *See City of Birmingham v. Thompson*, 404 So. 2d
> 589, 592 (Ala.1981)."

Hawkins v. City of Greenville, 101 F. Supp. 2d 1356, 1365 (M.D. Ala. 2000); see also Brown v. City of Huntsville, Ala., 608 F.3d 724, 743 (11th Cir. 2010) ("[T]he Alabama Supreme Court [has] held that where it was unclear whether the plaintiff's claims for 'assault and battery, false imprisonment and false arrest,' actually asserted 'vicarious liability for an intentional tort against the City,' § 11–47–190 would not immunize the City 'where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or unskillfulness.'"); but see Ex parte Harris, 2016 WL 4204837, at *12 (Ala. July 29, 2016) (Dismissal of city was proper where the complaint alleged "claims of malicious prosecution, false arrest, false imprisonment, harassment, intentional infliction of emotional distress, libel, and slander…" as "willful and intentional acts."); Waters v. City of Geneva, 47 F. Supp. 3d 1324, 1340 (M.D. Ala. 2014).  The court notes also that slander can arise from negligence.  See Cottrell v. Nat'l Collegiate Athletic Ass'n, 975 So. 2d 306, 333 (Ala. 2007) (explaining that private persons can prove defamation if the defendant *negligently* made defamatory statements).

In the instant case, it is not clear that the plaintiff has pleaded the claims of false arrest, false imprisonment, assault and battery, and slander as intentional or wanton acts, as opposed to merely negligent acts, by the defendants.  His reference in the Second Claim to "gross negligence" at least suggests that he may be attempting to plead them as a form of negligent conduct.  Whether these claims can

survive under Alabama Code § 11-47-190 depends upon the facts of each case and, therefore, are not susceptible to dismissal prior to discovery.[11]

Other claims, however, such as plaintiff's claims for "abuse of judicial process" and "malicious abuse of process," are not only the same claim and redundant, but also cannot be asserted against the City because, as a matter of law, a municipality is not capable of the required "malice."  See Walker v. City of Huntsville, 62 So. 3d 474, 501 (Ala. 2010).[12]  These claims must be dismissed.[13]

In summary, therefore, the City of Homewood's motion to dismiss will be GRANTED as to plaintiff's state-law claims for abuse of process (Sixth Claim and part of Ninth Claim) and the tort of outrage (Seventh Claim), but DENIED as to his claims for gross negligence, false arrest, false imprisonment, slander/false light, assault and battery, and failure to train.

---

[11]  Of course if the evidence developed during discovery establishes a fact pattern of intentional conduct, not just negligent unskillfulness, these claims could not be asserted against the City. See Ex parte Harris, 2016 WL 4204837, at *12 (Ala. July 29, 2016) (claims of malicious prosecution, false arrest, false imprisonment, harassment, intentional infliction of emotional distress, libel, and slander were based upon intentional acts of a city employee and, therefore, the municipal defendant was immune).

[12]  It follows logically that plaintiff cannot recover punitive damages against the City on any of his state-law claims.  The City is immune under Ala. Code § 11-47-190 on any claim based on something other than mere negligence.  However, mere negligence does not support the imposition of punitive damages.  See Lafarge N. Am., Inc. v. Nord, 86 So. 3d 326, 335 (Ala. 2011)("Punitive damages cannot be awarded on a negligence claim").  The only state-law claims that can get by the immunity of § 11-47-190 are those based on negligence alone, and thus are not capable of supporting a punitive damages award.

[13]  The plaintiff has not pleaded a state-law claim for malicious prosecution, but if he had, it too would be subject to dismissal as to the City for the same reason as the abuse of process claim, i.e. the City is legally incapable of malice.

### B. *Claims against Lt. Ross and Officer Jeffcoat*

#### 1. Federal-law Claims

Defendants Lt. Ross and Officer Jeffcoat also move to dismiss the complaint, making arguments similar to those asserted by the City of Homewood. Insofar as they contend that the complaint should be dismissed because it is a shotgun pleading and fails to comply with the pleading standards of Rule 8(a), the motion will be DENIED.  Although not an example of clarity, the complaint adequately notifies Ross and Jeffcoat of the claims made against them.

Unlike the City,[14] Ross and Jeffcoat contend they are entitled to qualified immunity with respect to the federal constitutional claims against them.   A summary of qualified immunity in the context federal constitutional claims states:

> "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). … Qualified immunity from suit is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

---

[14]   The City, of course, cannot claim qualified immunity, which is available only to individual defendants.

> Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). If the facts, construed as they must be in this summary judgment appeal in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was "clearly established." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156. Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009).

Brown v. City of Huntsville, Ala., 608 F.3d 724, 733–34 (11th Cir. 2010). When qualified immunity is raised in a motion to dismiss, the well-pleaded facts in the complaint are deemed to be true for assessing whether, in the first prong, a constitutional violation has occurred.

As discussed above, the federal-law claims alleged by plaintiff are: First Claim—arrest without probable cause (Fourth Amendment) and denial of due process and equal protection (Fourteenth Amendment); Second Claim—deliberate indifference to violation of the plaintiff's constitutional rights; Third Claim—use of excessive force in violation of the Fourth Amendment; Fourth Claim—arrest without probable cause (Fourth Amendment) and denial of equal protection (Fourteenth Amendment); and Fifth Claim—false imprisonment and denial of equal protection (Fourteenth Amendment). Because the Second Claim does not

itself allege a distinct constitutional violation, and because the Fourth Claim is essentially redundant of the First Claim, the federal claims pleaded against Ross and Jeffcoat are that they unconstitutionally arrested plaintiff without probable cause to do so, they violated his Fourteenth Amendment rights to due process and equal protection when they arrested him, they used unconstitutionally excessive force in effecting his arrest, and they denied him equal protection by falsely imprisoning him.  The court will consider qualified immunity with respect to each of these claims, assuming plaintiff's well-pleaded facts to be true.

a. Arrest Without Probable Cause

The First Claim and the Fourth Claim allege redundantly that the plaintiff was arrested without probable cause and, in so doing, defendants Ross and Jeffcoat deprived him of due process of law and equal protection.  The first step in the qualified immunity analysis is whether the facts pleaded by the plaintiff establish a constitutional violation.  A concise summary of the plaintiff's factual allegations is that he participated in a demonstration at the Wal-mart store in Homewood.  After the demonstration was over, he saw Lt. Ross arresting another man who participated in the demonstration.  The plaintiff began to record the arrest on his cellphone video, but Lt. Ross instructed him to leave, or he would be arrested also. Plaintiff stopped recording, gathered his belongings, and began walking to his car, when he heard Lt. Ross say, "Time's up!"  Ross instructed Officer Jeffcoat to put

the plaintiff under arrest.   In doing so, defendant Jeffcoat shoved the plaintiff against plaintiff's car, bruising the plaintiff's wrist and scratching the finish of the car.   Plaintiff was then transported to the Homewood City Jail where, later, defendant Roberts (the manager of the Wal-mart store) signed a complaint to charge the plaintiff with trespassing at the store.

Assuming these facts to be true, the plaintiff has stated a claim for an illegal arrest without probable well enough to survive a motion to dismiss and to proceed to discovery.   In essence, he alleges that he complied with Lt. Ross's instructions to leave, but before he could, Ross ordered him arrested.   It is not clear what Ross based his arrest on, whether it was trespass, disorderly conduct, or disobeying a lawful order.[15]   In any event, under plaintiff's version of the facts, which the court must assume to be true at this stage of the case, there was not probable cause for arrest on any of these grounds.   "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."   Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010), citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).   Because Wal-mart is a public store, Ross alone could not have determined that plaintiff was trespassing, nor is there any

---

[15]   The First Amended Complaint quoted from Officer Jeffcoat's arrest report to the effect that Lt. Ross instructed him to arrest plaintiff for criminal trespass.  (Doc. 21, at ¶ 34).

indication in the pleaded facts that he was disorderly or was disobeying Ross's order to leave.  A person of "reasonable caution" had no basis to believe that "a criminal offense ha[d] been or [was] being committed" by the plaintiff.

Qualified immunity can exist even when probable cause is missing, as long as a reasonable officer could believe, even mistakenly, that probable cause existed. Qualified immunity is not lost if there is arguable probable cause for the arrest. "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"  Brown, at 734, quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004).  Whether, under the circumstances pleaded here, Ross and Jeffcoat had arguable probable cause turns on further factual development.  Based simply on the facts as pleaded by the plaintiff, it cannot be said that even arguable probable cause to arrest him existed.

Even though the plaintiff's claim for an illegal arrest without probable cause survives at this time against a qualified immunity challenge, it is clear that the claim is grounded entirely on the Fourth Amendment and there is no Fourteenth Amendment due process or equal protection element to the claim.  The standard for assessing whether an arrest complies with the Fourth Amendment requirement of probable cause (or arguable probable cause) is the Fourth Amendment, not the

Fourteenth Amendment due process or equal protection clauses.  See Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994); Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). Thus, to the extent plaintiff attempts to plead a violation of the Fourteenth Amendment guarantees of due process and equal protection[16] arising out of an arrest, the claim is due to be dismissed, as the Fourth Amendment is the appropriate basis for analyzing the legality of an arrest.  Because the pleaded facts fail to show a violation of the due process and equal protection guarantees of the Fourteenth Amendment, the first prong of the qualified immunity analysis is missing.   Therefore, defendants Ross and Jeffcoat are entitled to qualified immunity with respect to the Fourteenth Amendment due process and equal protection claims implied in plaintiff's First and Fourth Claims, but not (at least at this time) to his illegal arrest claim under the Fourth Amendment.

b.  Excessive Force Making the Arrest

Plaintiff's Third Claim alleges excessive force was used to make the arrest. Under plaintiff's own version of the facts, only Officer Jeffcoat was actually involved physically in plaintiff's arrest.   The facts alleged in the amended complaint state that Lt. Ross instructed Officer Jeffcoat to arrest plaintiff, but Ross

---

[16]  The court recognizes that it is possible to plead a claim alleging that an arrest was made for a racially discriminatory reason in violation of the equal protection clause, but that is not what is pleaded here.  Plaintiff has not pleaded that he was arrested for a racially discriminatory reason.

was not physically involved in how the arrest was made.[17]   For this reason, Lt. Ross is entitled to qualified immunity as to plaintiff's Third Claim, but Officer Jeffcoat is not.   While the description of the arrest in the complaint suggests only *de minimis* force was used (plaintiff was shoved against his car), a gratuitous use of force when no force is needed is excessive.   See Saunders v. Duke, 766 F.3d 1262, 1267 (11th Cir. 2014).   Because plaintiff alleges he was compliant and cooperative, there was no need for force.   Jeffcoat is not entitled to qualified immunity on this Third Claim.

### c. False Imprisonment

Plaintiff's Fifth Claim alleges an unconstitutional false imprisonment, expressly under § 1983.   This claim requires a showing of both a common law false imprisonment and a denial of procedural due process.   The Eleventh Circuit has written:

> A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment. *See Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir. 1993), modified on other grounds, 15 F.3d 1022 (1994).   The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement. *See id.* at 1562 n. 3.   The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the

---

[17]   There is nothing in the facts pleaded in the complaint to suggest that Lt. Ross either knew that Officer Jeffcoat would use excessive force to make the arrest or that Ross had the opportunity to intervene to stop the use of excessive force.

detainee was entitled to release."  *Id.* at 1563; *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (*per curiam*).

Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009).  Under the facts pleaded in the First Amended Complaint, there is little question that Lt. Ross and Officer Jeffcoat intentionally confined plaintiff, but there are no facts pleaded to show that they continued his detention after he should have been released.  For that reason, both Ross and Jeffcoat are entitled to qualified immunity on this claim and it will be dismissed as to these two defendants.

In summary, the motion to dismiss by defendants Ross and Jeffcoat will be GRANTED as to the plaintiff's Fourteenth Amendment claims for denial of due process and equal protection, and as to his Fifth Claim for false imprisonment under § 1983.  The motion to dismiss also will be GRANTED as to defendant Ross with respect to plaintiff's Third Claim for excessive force in making the arrest. The motion to dismiss is DENIED as to plaintiff's Fourth Amendment claim for an illegal arrest without probable cause (under both the First and Fourth Claims), as well as his Third Claim for excessive force against defendant Jeffcoat.

2. State-law claims

Plaintiff has pleaded the same state-law claims against defendants Ross and Jeffcoat as he pleaded against the City of Homewood, which are the following: gross negligence (Second Claim); "official misconduct amounting to an abuse of

judicial process" (Sixth Claim); tort of outrage (Seventh Claim); slander and false light (Eighth Claim); malicious abuse of process, false arrest, false imprisonment, "failure to train," "violation of constitutional & civil rights," and slander (Ninth Claim); assault and battery (Tenth Claim); and failure to supervise and train agents and employees (Eleventh Claim).   In response to these claims, the motion to dismiss contends that Ross and Jeffcoat are entitled to absolute discretionary-function immunity under Alabama Code § 6-5-338 (1975).  The Eleventh Circuit has explained the operation of this state immunity on state-law claims this way:

> Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002).  *In Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise.  *Id*. at 405.

> There is also statutory, discretionary-function immunity in Alabama. Specifically, § 6–5–338 of the Alabama Code contains a provision immunizing law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. Ala.Code § 6–5–338(a) (1994) ( "Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.").   *Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6–5–338(a).  *Ex*

*parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala.2005) ("The restatement of State-agent immunity as set out in *Cranman*, 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6–5–338(a).")....

The Alabama Supreme Court established a burden-shifting framework for application of the state-agent immunity test. A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). "If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id*.

Brown v. City of Huntsville, Ala., 608 F.3d 724, 740–41 (11th Cir. 2010). In this case, it is not disputed that Ross and Jeffcoat were acting in a function that would entitled them to the immunity. Indeed, the plaintiff has affirmatively alleged that they were acting as duly-sworn police officers for the City of Homewood. The question then becomes whether the plaintiff has alleged facts from which it can be plausibly inferred that Ross and Jeffcoat acted "willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority."

### a. False Arrest, False Imprisonment

Similar to the court's conclusions regarding plaintiff's federal claims, the facts pleaded in the First Amended Complaint are sufficient to survive a motion to dismiss as to the plaintiff's false arrest and false imprisonment. Again, plaintiff has alleged (which must be assumed true at this stage of the case) that he was

arrest despite complying with Lt. Ross's order to leave the scene.  Of course, as a product of his arrest, he was also "confined" for no real legal reason.  It can be inferred from the pleaded facts that Ross and Jeffcoat acted willfully, maliciously, and in bad faith.  Whether plaintiff can establish these facts with evidence remains to be seen.

### b. Assault and Battery

Plaintiff's state-law assault and battery claim is analogous to his § 1983 claim for use of excessive force by Officer Jeffcoat.  Here, he alleges he was assaulted and battered by Jeffcoat without legal authority because the arrest itself was unlawful.  It is not disputed that Jeffcoat performed the actual physical arrest, and that Ross was not directly involved in the physical act of the arrest.  For the reasons discussed, the pleaded facts support an inference that Jeffcoat had no authority to touch plaintiff at all, much less shove him into a car, and that he acted in bad faith.  Jeffcoat's motion to dismiss this claim will be DENIED at his point, but Ross's motion will be GRANTED, as the plaintiff's own factual allegations make clear that Ross was not physically involved in plaintiff's arrest, even if he directed Jeffcoat to make the arrest.

c.  Other Claims Due to be Dismissed

Plaintiff's remaining state-law claims against Ross and Jeffcoat are due to be dismissed because, for various, reasons, they simply fail to state causes of action against these two defendants.  For example, by plaintiff's own allegations, neither Ross nor Jeffcoat signed the complaint that charged him with trespass.  While they were involved in making a *warrantless* arrest, they were not involved in misusing any judicial process.  "[I]n order to prove the tort of abuse of process, a plaintiff must prove: "'"(1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice."'"  *Preskitt v. Lyons*, 865 So. 2d 424, 430 (Ala. 2003) (quoting *Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001), quoting in turn *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998))."  Moon v. Pillion, 2 So. 3d 842, 846 (Ala. 2008).  At time of the arrest, there was no judicial process relating to the plaintiff to be used or misused.  That came about only later when Roberts signed a complaint against the plaintiff for trespass.  Hence, there simply are no facts pleaded in the complaint to support the allegation that Ross and Jeffcoat wrongfully used any judicial process.

The same is true of plaintiff's slander and false light claims—neither Ross nor Jeffcoat was involved in publishing a false or misleading statement about plaintiff.  Plaintiff expressly alleges that these claims arise from the posting of his

photograph on the City of Homewood social media page after his arrest.  There is no fact pleaded to indicate that Ross or Jeffcoat was involved in that event.

The facts pleaded in support of plaintiff's tort of outrage claim (also known as the tort of intentional infliction of emotional distress) against Ross and Jeffcoat simply fails to show the necessary level of egregiousness required under Alabama law.  To prove the claim, the plaintiff must allege and show "that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'  *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990) (citing *American Road Service Co. v. Inmon* [, 394 So. 2d 361 (Ala. 1980)])."  Little v. Robinson, 72 So. 3d 1168, 1172 (Ala. 2011).  Even assuming that Ross and Jeffcoat acted intentionally or recklessly by arresting the plaintiff, their arrest was simply not "extreme and outrageous," nor has the plaintiff alleged facts supporting and inference that he suffered emotion distress so severe no reasonable person could be expected to endure it.  This claim is due to be dismissed as to Ross and Jeffcoat.

Plaintiff's claim that Ross and Jeffcoat failed to train or supervise their agents or employees is due to be dismissed because neither owed a duty to the plaintiff to do so.  The claim of negligent failure to train or supervise has been described this way:

31

A claim of negligent failure to train or supervise requires the following showing:

> """In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge."""

*Big B, Inc. v. Cottingham*, 634 So.2d 999, 1003 (Ala.1993) (quoting *Lane v. Central Bank of Alabama, N.A.*, 425 So.2d 1098, 1100 (Ala.1983), quoting *Thompson v. Havard*, 285 Ala. 718, 723, 235 So.2d 853, 858 (1970)).

Under Alabama law, the duty to properly train and supervise is an incident of the "master and servant relationship."  It is the master (the employer) who exercises control over the activities of its servants, and, for that reason, has a duty to train and supervise its servants in order to avoid injury to others arising from its servants' incompetent performance of their master's work.  In this case, there is no factual allegation that Ross or Jeffcoat was the master responsible for training and supervision.  They were the servants, whose competent performance of their duties placed upon the City of Homewood the duty to properly train and supervise them.  Thus, this claim cannot be asserted against Ross and Jeffcoat.

To the extent plaintiff alleges a claim for gross negligence by Ross and/or Jeffcoat due to his arrest, discretionary-function immunity under § 6-5-338 bars the claim. Because it is undisputed that Ross and Jeffcoat was acting in a law enforcement capacity that would entitle them to the immunity, the plaintiff must plead facts from which it can be inferred that that acted "willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority." Mere negligence, even gross negligence, is not enough to overcome the immunity. This claim is due to be dismissed.[18]

Finally, the claim of "violation of constitutional & civil rights" (Ninth Claim) is nothing more than a redundancy. It does not allege any particular substantive or procedural right being violated, but simply says plaintiff's rights (in general) were violated. It either fails to allege any claim at all or it is vague repetition of the various other specific claims in the complaint. It is, effectively, mere surplusage due to be stricken.

In summary, the motion to dismiss filed on behalf of Ross and Jeffcoat will be GRANTED as to all state-law claims pleaded against them, except the claims for false arrest and false imprisonment, and the claim of assault and battery against

---

[18] It is not clear that the City of Homewood is entitled to have the gross negligence claim against it dismissed as well. Although Ala. Code § 6-5-338 provides that the employing municipality is entitled to claim any immunity that the employee officer may claim, that does not answer in this case whether some of the claims that cannot be asserted against Ross and Jeffcoat might nevertheless be viable claims against the City based on the actions of *other* unnamed employees, such as, for example, whoever posted the plaintiff's photograph on social media.

Jeffcoat.   The motion to dismiss is DENIED as to false arrest and false imprisonment claims in the Ninth Claim and as to the assault and battery claim against Jeffcoat in the Tenth Claim.

### C. Claims against Wal-mart and Roberts

Because the plaintiff's "shotgun" pleading alleges the same claims generally against all defendants, a careful reading of the complaint is necessary to identify those claims that have potential viability against Wal-mart and Roberts.   Most of the claims in the First Amended Complaint fail to allege legally cognizable claims against them.

### 1.   Claims that Do Not Implicate These Defendants

Certain of the claims set out in the complaint simply do not allege facts implicating either Wal-mart or David Roberts.   For example, the First Claim alleges a false arrest without probable cause, but by plaintiff's own factual allegation, this was carried out by Ross and Jeffcoat alone.   There are no facts pleaded to show that Wal-mart or Roberts participated in or authorized the arrest.[19] Likewise, the Third Claim alleges excessive force during the arrest.   There is nothing pleaded to indicate that Wal-mart or Roberts was involved in the arrest itself.   The Fourth and Fifth Claims allege, respectively, an unconstitutional false

---

[19]   In his own factual allegations, the plaintiff says he was arrested only *after* Lt. Ross instructed him to leave.   Clearly, there could be no pre-existing agreement or authorization to arrest plaintiff as he was arrested only when Lt. Ross became dissatisfied with plaintiff's effort to leave as instructed.

arrest and an unconstitutional false imprisonment under 42 U.S.C. § 1983, but § 1983 applies only to defendant's "acting under color of state law." Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S. Ct. 1729, 56 L.Ed.2d 185 (1978).   It does not supply a remedy against private, non-state actors, such as Wal-mart and Roberts.[20] Furthermore, plaintiff's Eighth and Tenth Claims assert, respectively, claims for slander and assault and battery, but it is clear from his complaint that if these events occurred, they were due to the actions of Homewood and its employees, not Wal-mart or Roberts.

Plaintiff's abuse of process claim, found in the Sixth Claim and part of the Ninth Claim, fails because the amended complaint contains no factual allegations that Wal-mart or Roberts misused a judicial process.   While the complaint alleges that Roberts signed a criminal complaint alleging trespass by the plaintiff, there is

---

[20]   Plaintiff attempts to argue that Wal-mart and Roberts conspired with Homewood and/or Ross and Jeffcoat, but he has not pleaded sufficient facts to show a pre-existing agreement among the defendants to violate his rights.   The Eleventh Circuit as explained:

> "The plaintiff attempting to prove such a [§ 1983] conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights.   The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted).   A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement.").

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010); see also Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002).   Absent some evidence of an agreement between Wal-mart and Roberts on the one hand and the City and/or Ross and Jeffcoat on the other, § 1983 simply is not applicable to Wal-mart and Roberts as private non-state actors.

nothing to indicate that Roberts or Wal-mart misused the resulting arrest warrant or charge.   Abuse of process requires the "misuse" of a judicial process with an ulterior motive, see Moon v. Pillion, 2 So. 3d 842, 846 (Ala. 2008), and that is not alleged here.[21]   Plaintiff does not plausibly identify what judicial process was misused, how it was misused, or the ulterior motive for why it was misused.

The court assumes that plaintiff's Seventh Claim is intended to allege a claim of outrage against Wal-mart and Roberts.   As already discussed above, it simply fails to allege conduct so extreme or outrageous that it is actionable.   It does not allege that the emotional distress suffered by plaintiff was more than any reasonable person can be expected to endure.   While being charged with criminal trespass is traumatic, the making of the charge by Wal-mart and/or Roberts is not so extreme or outrageous that no civilized person could be expected bear being so charged.

Also, plaintiff's attempt to allege a claim for negligent failure to train or supervise agents and employees, as alleged in the Ninth and Eleventh Claims, must allege the necessary element that an agent or employee of either Wal-mart or Roberts committed some wrongdoing due to the employee's incompetence or lack of training.   Indeed:

---

[21]   Oddly, despite alleging that Roberts signed the criminal complaint against him, plaintiff does not allege a malicious prosecution claim.

"[I]mplicit in the tort of negligent[, wanton, or intentional] hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the injury to the plaintiff." *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) (quoting *Humana Med. Corp. of Alabama v. Traffanstedt*, 597 So. 2d 667, 669 (Ala. 1992))(emphasis in *Jones Express*).  Indeed, [t]o support a claim of negligent supervision, the plaintiff must demonstrate that ... the employee committed a tort recognized under Alabama law." *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F.Supp. 2d 1336, 1357 (M.D.Ala. 2009) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999)); *see also Andazola v. Logan's Roadhouse Inc.*, 871 F.Supp.2d 1186, 1225 (N.D.Ala. 2012) ("However, not just any 'incompetency' suffices to give rise to a cause of action for so-called 'negligent hiring, training, retention, and supervision liability.'  Rather, there must be an underlying common law tort recognized by Alabama courts: that is, in order to prevail, the plaintiff must prove that the allegedly incompetent employee committed a tortious act." (citing *Stevenson*, 762 So. 2d at 824)).

<u>Agee v. Mercedes-Benz U.S. Int'l, Inc.</u>, 2013 WL 832354, at *8 (N.D. Ala. Feb. 28, 2013).  Other than alleging that Roberts signed the criminal complaint against plaintiff,[22] the First Amended Complaint nowhere alleges that some

---

[22]  Of course, it must be remembered that the plaintiff has not alleged a malicious prosecution claim in this action, or even the elements of it, as a possible "common-law tort" as part the negligent failure to train or supervise claim.  Likewise, although Roberts was the manager of the Wal-mart store, he was not the "master" or employer, even if some other employee committed a common-law tort against the plaintiff.  The tort of negligent, wanton, or intentional hiring, training, or supervision is incident to the master-servant relationship.  It is the master, or employer, who owes the duty to care to others.  Co-employees, even supervisory co-employees, personally owe no common-law duty to others to supervise their subordinates in any particular way to prevent torts.  A supervisor's duty to supervise competently runs to his master, and if he fails to do so, resulting in a subordinate's incompetence causing harm to another, it is the master, not the supervisory employee, who is responsible in law.  Notwithstanding this, there is no allegation in this case that *Roberts'* failure to properly supervise some other Wal-mart employee caused harm to the plaintiff.  According, even *if* Roberts owed a duty to the plaintiff to supervise

employee of Wal-mart committed a common-law tort against the plaintiff due to a lack of training or supervision by Wal-mart. As to the signing of the criminal complaint by Roberts, plaintiff has alleged that Roberts signed the trespassing complaint even though Roberts never personally told plaintiff to leave the Wal-mart premises or even saw him inside the store. This alleges that Roberts had no probable cause to charge the trespass. Arguably, Wal-mart failed to train Roberts about the proper circumstances under which a store manager may charge someone with trespassing on store premises. At the this pleading stage, at which the plaintiff's allegations of fact must be taken as true, the plaintiff has alleged facts showing a potential failure to train Roberts as the store manager of the circumstances under which a manager may sign a trespass complaint on behalf of Wal-mart. Therefore, while Roberts himself cannot be personally liable for a negligent failure to train or supervise (and the claim against him will be dismissed), Wal-mart may be liable if it negligently, wantonly, or intentionally failed to train Roberts about the circumstances under which a store manager may sign a criminal trespass complaint against a person on store property.

Finally, as explained above with respect to the assertion of this claim against the City, Ross, and Jeffcoat, the reference to "violation of constitutional & civil

---

his subordinates with care, there is no allegation that Roberts' failure to supervise or train a subordinate caused harm.

rights" is redundant surplusage.  It alleges nothing new or different from the specific claims for violation of his rights pleaded elsewhere in the complaint.

Conclusion

To conclude, the court will enter a separate order granting in part and denying in part the motions to dismiss filed by the defendants, as follows:

1.  The motion to dismiss for the **City of Homewood** is GRANTED IN PART, and the plaintiff's claims against the City for abuse of process (Sixth Claim and part of Ninth Claim) and the tort of outrage (Seventh Claim) are DISMISSED WITH PREJUDICE; but the motion will be DENIED as to the plaintiff's federal claims (First Claim, Third Claim, Fourth Claim, and Fifth Claim) and  the state-law claims for gross negligence, false arrest, false imprisonment, slander/false light, assault and battery, and negligent failure to train.

2.  The motion to dismiss for defendant **Ross** is GRANTED IN PART as to the plaintiff's Third Claim for unconstitutionally excessive force, his First and Fourth Claims for violations of the Fourteenth Amendment due process and equal protection clauses during for his arrest, and his Fifth Claim for unconstitutional false imprisonment, all of which are DISMISSED WITH PREJUDICE as to defendant Ross.  Defendant Ross's motion also is GRANTED IN PART as to the plaintiff's Second Claim for gross negligence; the Sixth Claim for official

misconduct and abuse of process; the Seventh Claim for the tort of outrage; the Eighth Claim for slander and false light; those parts of the Ninth Claim for abuse of process, failure to train, "violation of constitutional & civil rights," and slander; the Tenth Claim for assault and battery; and the Eleventh Claim for failure to train or supervise, all of which are DISMISSED WITH PREJUDICE.

3. The motion to dismiss for defendant **Jeffcoat** is GRANTED IN PART as to the plaintiff's First and Fourth Claims for violations of the Fourteenth Amendment due process and equal protection clauses during for his arrest, and his Fifth Claim for unconstitutional false imprisonment, all of which are DISMISSED WITH PREJUDICE as to defendant Jeffcoat.  Defendant Jeffcoat's motion also is GRANTED IN PART as to the plaintiff's Second Claim for gross negligence; the Sixth Claim for official misconduct and abuse of process; the Seventh Claim for the tort of outrage; the Eighth Claim for slander and false light; those parts of the Ninth Claim for abuse of process, failure to train, "violation of constitutional & civil rights," and slander; and the Eleventh Claim for failure to train or supervise, all of which are DISMISSED WITH PREJUDICE.

4. The motion to dismiss for defendant **Wal-mart** will be GRANTED IN PART as to all of the plaintiff's federal-law claims (First Claim—arrest without probable cause, denial of due process, denial of equal protection; Second Claim— deliberate indifference to need for training of police officers; Third Claim—

excessive force; Fourth Claim—unconstitutional arrest without probable cause; Fifth Claim—unconstitutional false imprisonment), all of which as DISMISSED WITH PREJUDICE.  The motion also will be GRANTED IN PART as to all state-law claims, except for part of the Ninth Claim and the Eleventh Claim for failure to train or supervise Roberts with respect signing criminal complaints for trespass.

5.  The motion to dismiss for defendant **Roberts** will be GRANTED and all claims against him will be DISMISSED WITH PREJUDICE.

For the sake of clarity, the following claims remain pending:

1.  Arrest of the plaintiff without probable cause in violation of the Fourth Amendment against defendants City of Homewood, Ross, and Jeffcoat.  (First and Fourth Claims)

2.  Gross negligence against the City of Homewood.  (Second Claim)

3.  Deliberate indifference to the need for further training of police officers with respect to making constitutionally proper arrests, against the City of Homewood.  (Second Claim)

4.  Use of unconstitutionally excessive force in making an arrest of the plaintiff, in violation of the Fourth Amendment, against the City of Homewood and defendant Jeffcoat.  (Third Claim)

5.   Negligent slander and false-light invasion of privacy against the City of Homewood.  (Eighth Claim)

6.   Common law false arrest and false imprisonment against the City of Homewood, Ross, and Jeffcoat.  (Ninth Claim)

6.   Assault and battery against the City of Homewood and defendant Jeffcoat.  (Tenth Claim)

7.   Negligent, wanton, intentional failure to train employees regarding the proper circumstances under which to sign a criminal complaint for trespass, against Wal-mart.  (Eleventh Claim).

A separate order will be entered.

DONE this 27th day of December, 2016.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE